IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEADFAST INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>        Plaintiffs,<br><br>v<br><br>ENVIRONMENTAL BARRIER COMPANY, LLC., GEO-SOLUTIONS, INC. *successor-in-interest to* ENVIRONMENTAL BARRIER COMPANY, LLC **and EBC HOLDCO, LLC**,<br><br>        Defendants. | 2:15-cv-1442 |

## **MEMORANDUM OPINION AND ORDER OF COURT**

Now pending before the Court are DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, OR ALTERNATIVELY STAY (ECF No. 12) and a MOTION FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS (ECF No. 25), with attached exhibits, filed by the Defendant "Policyholders." The parties have thoroughly briefed the issues (ECF Nos. 13, 22, 26, 27) and developed the record. In particular, in support of their position Steadfast Insurance Company and Zurich American Insurance Company (the "Insurer Plaintiffs") have submitted Declarations from attorneys Steven Cantarutti and Kevin Coughlin, with numerous exhibits. The motions are ripe for disposition.

**I.    Background**

In this case, the Insurers seek a declaration regarding claims made against the Policyholders in a New Jersey lawsuit (the "Underlying Action"), which arose out of a New Jersey construction project.

A. The Underlying Action

A civil action is now pending in the Superior Court of New Jersey, Law Division, Bergen County, Docket No. BER-L-1397-13, captioned *EnviroFinance Group. LLC, et al. v. The Louis Berger Group, Inc., et al.* (the "Underlying Action"). It arose out of a construction project to develop the Richard P. Kane Natural Area Wetlands Bank in the Meadowlands, New Jersey. The Underlying Action was originally filed in February 2013 and is still pending in the Superior Court in Bergen County, New Jersey. The plaintiffs in the Underlying Action are Envirofinance Group, LLC ("EFG") and its wholly-owned subsidiary Kane Mitigation, LLC ("Kane"). The operative pleading is the Second Amended Complaint, which was filed in June 2015. The defendants in the Underlying Action are The Louis Berger Group, Inc. ("Berger"), a New Jersey engineering firm, Environmental Barrier Company, LLC ("Geo-Con"), Geo-Solutions, Inc. ("Geo-Solutions"), Geo-Con Holdings, LLC, EBC Holdco, and numerous John Does and Jane Does. Also named as Counterclaim or Third-Party Defendants in the Underlying Action are Earthmark NJ Kane Mitigation, LLC ("Earthmark"), Hesco Bastion, Inc. and Shaw Environmental, Inc.

In 2008, Berger, Geo-Con and Earthmark formed a team to construct a wetlands area in New Jersey, the "Kane Bank." To perform that work, they entered into an agreement (the "MBI") with the Meadowlands Conservation Trust. In March 2010, EFG agreed to provide a $12 million revolving loan to finance the project. In connection with the loan, EFG entered into agreements with Earthmark, Berger and Geo-Con, which included the option to assume their duties under the MBI. EFG alleges that Berger and Geo-Con concealed serious problems with the project, specifically with the "concertainer" berm system. The New Jersey DEP had questioned the use of concertainers in lieu of earthen berms, but ultimately issued a permit for

2

the project, while noting its concerns. Construction problems ensued, which led to significant cost overruns. EFG alleges that Berger and Geo-Con made false certifications regarding the status of the job in order to obtain draws against the loan. In October 2010, EFG declared Earthmark in default of the loan agreement and exercised its rights to complete the project. In February 2012, EFG assigned its rights to Kane, who became the successor entity under the MBI. In the Underlying Action, EFG and Kane assert four claims against Berger; three claims against Geo-Con (fraud, negligent misrepresentation, negligence); a fraudulent transfer claim against Geo-Con, Geo-Con Holdco, EBC Holdco and Geo-Solutions; a fraudulent transfer aiding and abetting claim against the Doe Defendants; an assignee liability claim against EBC Holdco; and a successor liability claim against Geo-Solutions.

Steadfast issued an Environmental Services Package Policy to Geo-Con for the policy period May 1, 2010 to May 1, 2011. Zurich issued a Commercial Insurance policy to Geo-Con for the policy period May 1, 2011 to May 1, 2012. In May 2013, Geo-Con tendered the Complaint in the Underlying Action to Zurich and requested coverage. On July 1, 2013, Zurich denied coverage. On October 13, 2014, Zurich issued a second disclaimer letter regarding the Amended Complaint. On July 6, 2015, Zurich acknowledged receipt of the Second Amended Complaint in the Underlying Action. The Policyholder Defendants aver that since July 2015, they have advised the Insurers that EFG is also seeking consequential damages of $1.3 million in the Underlying Action.

B.     The Declaratory Judgment Action

Rather than issuing a third disclaimer letter, Zurich and Steadfast filed the instant Declaratory Judgment Action on November 4, 2015 in this Court, the United States District

Court for the Western District of Pennsylvania. The Insurer Plaintiffs[1] seek a determination, under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 *et seq.*, that they do not have a duty to defend or indemnify the Policyholder Defendants for claims asserted against them in the Underlying Action.

The Policyholder Defendants are located in western Pennsylvania. Defendant Geo-Con is (or was) located in Pittsburgh, Pennsylvania. Defendant Geo-Solutions has its headquarters in New Kensington, Pennsylvania, and is the successor-in-interest to Geo-Con. Defendant EBC Holdco was an entity created by Geo-Solutions during the Geo-Con acquisition to assume the liabilities of Geo-Con that are at issue in this case. The Insurer Plaintiffs have their primary places of business in Schaumberg, Illinois. Although the claims arise under state law, there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000. On January 11, 2016, the Policyholder Defendants filed the instant Motion to Dismiss or Stay this Declaratory Judgment case.

C.     The New Jersey Action

The next day, on January 12, 2016, the Policyholder Defendants filed a largely parallel lawsuit in the Superior Court of Bergen County, New Jersey (the "New Jersey Action"). The Court takes judicial notice of the filing of the New Jersey Action.[2] In addition to Steadfast and Zurich, the New Jersey Action names Nautilus Insurance Company ("Nautilus") as a Defendant

---

[1] Although the Policyholders had not tendered under the Steadfast policy, Steadfast has joined as a Plaintiff in the Declaratory Judgment Action. Nautilus Insurance Company is not a Plaintiff in this lawsuit.

[2] The MOTION FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS (ECF No. 25) is **GRANTED**. *See* Fed. R. Evid. 201; *Schuylkill Health Sys. v. Cardinal Health, Inc.*, 2014 WL 3805466, at *1 (E.D. Pa. Mar. 14, 2014) (citation omitted) (explaining that a court may take judicial notice of public filings on the docket of another court not for the truth of the facts recited therein, but for the existence of the filings).

because Nautilus issued an Environmental Combined Policy to Geo-Con for the period of May 1, 2012 to January 15, 2013. In accordance with N.J.S.A. 2A:16-56, EFG and Kane (the plaintiffs in the Underlying Action) are also named as Defendants, although no claims are asserted against EFG or Kane. In the New Jersey Action, the Policyholders seek a declaration of the duties of Steadfast, Zurich and Nautilus to defend and indemnify them as to the Underlying Action. In addition, the Policyholders asserts claims for breach of contract against Steadfast, Zurich and Nautilus, and bad faith claims against Zurich and Nautilus.

The Court also takes judicial notice that on February 9, 2016, Steadfast and Zurich filed a Notice of Removal of the New Jersey Action to the United States District Court for the District of New Jersey (Civil Action No. 16-708). Several motions are pending in that forum, including motions to dismiss or stay filed by the Insurers and a Motion to Remand the case back to the New Jersey state court filed by the Policyholders.

**II.     Discussion**

The Policyholders contend that this Court should decline to exercise jurisdiction over this declaratory judgment case. The Insurers recognize that the decision is discretionary, but argue that this Court should opt to issue a declaration of their rights and duties, as requested.

The DJA provides, in pertinent part, that "any court of the United States . . . *may* declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201 (emphasis added). The exercise of jurisdiction under the DJA is, therefore, entirely discretionary. *See Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 139 (3d Cir. 2014) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). "[D]istrict courts are authorized, 'in the sound exercise of [their] discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all

arguments have drawn to a close.'" *Id.* (quoting *Wilton*, 515 U.S. at 288). While the "exercise of discretion must be 'sound,'" the scope of the district court's discretion has been framed in "broad terms." *Id.* (citing *Wilton*, 515 U.S. at 287). "Rather than being subject to the 'normal principle that federal courts should adjudicate claims within their jurisdiction,' district courts exercising DJA discretion are governed by 'considerations of practicality and wise judicial administration.'" *Id.* (quoting *Wilton*, 515 U.S. at 288).

In *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942), the Supreme Court set forth several factors a district court should consider before entertaining a declaratory judgment action whenever there is "another proceeding . . . pending in a state court in which all the matters in controversy between the parties could be fully adjudicated." *Id.* at 495. "Ordinarily," the Supreme Court explained, "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* "Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.* Thus, before exercising jurisdiction whenever there is a pending state-court proceeding involving the same matters, the district court must consider a non-exhaustive list of factors, such as the scope of the state court proceeding and "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Id.*

Fifty years later, in *Wilton*, the Supreme Court addressed "virtually identical" circumstances and reaffirmed "the *Brillhart* regime," again holding that district courts "have substantial latitude in deciding whether to stay or to dismiss a declaratory judgment suit in light of pending state proceedings." *Wilton*, 515 U.S. at 286. The *Wilton* Court specifically narrowed

its holding to situations in which there is a parallel state proceeding, however, noting that it was not attempting to "delineate the outer boundaries of that discretion in other cases, for example, cases raising issues of federal law or cases in which there are no parallel state proceedings." *Id.* at 290.

Although the Court of Appeals for the Third Circuit has acknowledged that the DJA gives district courts broad discretion, it has also warned that the exercise of that discretion must be "reasoned." *Bituminous Coal Operators' Assoc. v. Int'l Union, United Mine Workers of Am.*, 585 F.2d 586, 596 (3d Cir. 1978). District courts must, therefore, address a multitude of factors when exercising their DJA discretion. *Id.* There are a number of general factors that must be considered, such as whether a declaration "will resolve the uncertainty of obligation which gave rise to the controversy; the convenience of the parties; the public interest in settlement of the uncertainty of obligation; and the availability and relative convenience of other remedies." *United States v. Pa., Dep't of Envtl. Res.*, 923 F.2d 1071, 1075 (3d Cir. 1991) (internal citations omitted). The Court of Appeals has also identified several additional factors that are relevant only in the insurance context:

> "(1) A general policy of restraint when the same issues are pending in a state court;
>
> (2) An inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion;
>
> (3) Avoidance of duplicative litigation."

*State Auto Ins. Co. v. Summy*, 234 F.3d 131, 134 (3d Cir. 2000) (quoting *Pa., Dep't of Envtl. Res.*, 923 F.2d at 1075).

In *Reifer*, the Court of Appeals for the Third Circuit held that the "the existence or non-existence of pending parallel state proceedings is but one factor for a district court to consider" in

7

determining whether to exercise jurisdiction under the DJA. 751 F.3d at 144. The *Reifer* Court articulated a non-exhaustive list of eight (8) other factors that must be considered in exercising discretion as to whether or not to exercise jurisdiction under the Declaratory Judgment Act:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> (2) the convenience of the parties;
>
> (3) the public interest in settlement of the uncertainty of obligation;
>
> (4) the availability and relative convenience of other remedies;
>
> (5) a general policy of restraint when the same issues are pending in a state court;
>
> (6) avoidance of duplicative litigation;
>
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and
>
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Reifer*, 751 F.3d at 146.

Although the existence of parallel state proceedings is not dispositive, it is worthy of "increased emphasis." *Id.* (citations omitted). As the Court of Appeals explained:

> the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise. In this circumstance, as part of exercising sound and reasoned discretion, district courts declining jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors. This same rationale applies when state proceedings do exist. The existence of pending parallel state proceedings militates significantly in favor of declining jurisdiction, although it alone does not require doing so. In this circumstance, as part of exercising sound and reasoned discretion, district courts exercising jurisdiction should be rigorous in ensuring themselves that the existence of pending parallel state proceedings is outweighed by opposing factors.

*Reifer*, 751 F.3d at 144-45.

The Court of Appeals made several additional observations in *Reifer* that are relevant in this case. In particular, the Court of Appeals noted that "[t]he insurance coverage context has been particularly fertile ground for exercising – and testing the boundaries of – DJA discretion, especially since [the] decision in *Summy*." *Id.* (citations omitted). Prior to *Reifer*, "the trend of many District Courts in Pennsylvania" was "to decline to exercise jurisdiction over declaratory judgment actions, involving an insurance company, that are solely brought on diversity, and have no federal question or interest." *Reifer v. Westport Ins. Corp.*, 943 F. Supp. 2d 506, 508 (M.D. Pa. 2013), *aff'd*, 751 F.3d 129 (internal citations omitted). This was true even in the absence of parallel state proceedings. *See, e.g.*, *id.*; *Phoenix Ins. Co. v. Kellner*, No. CIV. 11-1085, 2012 WL 266470, at *3 (W.D. Pa. Jan. 30, 2012). Support for this so-called "trend" was seemingly found in the frequently quoted line from *Summy* that "[t]he desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." 234 F.3d at 136. In *Reifer*, the Court of Appeals called this "trend" into question, finding it "problematic for two reasons." 751 F.3d at 147. "First," the Court of Appeals explained, "there is nothing to distinguish these cases from any other declaratory judgment action that invokes diversity jurisdiction and asks federal courts to declare the rights of parties under settled state law." *Id.* "Second, these cases implicate neither an improper use of procedure by insurance companies nor unfairness to insureds." *Id.* The Court of Appeals acknowledged the "district courts' apparent frustration over the volume" of declaratory judgment actions brought by insurance companies, but made clear that there is "'no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage.'" *Id.* (quoting *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)). Thus, the Court of Appeals "reject[ed] any reading of *Summy* that

9

supports per se automatic declining of jurisdiction in every" case involving an insurance coverage dispute arising under state law. *Id.* The Court of Appeals also cautioned that its remarks in *Summy* – "that such cases have 'no special call on the federal forum and that even less reason for federal jurisdiction exists when state law is 'firmly established'" – were dicta, inasmuch as "*Summy*'s holding specifically turned on considerations relevant to the pending state court suit." *Id.* at 147 (quoting *Summy*, 234 F.3d at 135-36). Rather than dismissing such actions by rote recitation of the *Summy* factors, the Court of Appeals emphasized that district courts must carefully analyze the factors set forth above – starting with the existence or non-existence of parallel state proceedings – before exercising or declining to exercise jurisdiction. *Id.*

The threshold question, then, is whether there is a pending parallel state proceeding, such that there is a presumption for or against the exercise of DJA discretion. Both sides have sought to influence that issue by engaging in procedural gamesmanship. The Policyholders filed an action in the New Jersey state court, which not only encompasses all of the issues in this Declaratory Judgment case, but also includes additional claims and additional parties, such that it will continue regardless of whether this Court exercises jurisdiction over the Declaratory Judgment Action. The Policyholders' claims against Nautilus, their claims regarding coverage for compensatory damages, and the insurance bad faith claims in the New Jersey Action cannot be resolved in this case. The Insurers promptly removed the New Jersey Action to federal court in New Jersey and have filed motions to dismiss it. The Policyholders then filed a motion (which remains pending) to remand the case back to the New Jersey state court.

The *Brillhart* Court described a pending "parallel" proceeding as one "presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495. The pending court proceeding must, in other words, permit "all the matters in controversy

10

between the parties" to "be fully adjudicated." *Id.* It is essentially undisputed that the New Jersey Action exists; is based on state law; and encompasses all matters in controversy in this Declaratory Judgment case.

The Insurers argue that the presumption should not be triggered because the New Jersey Action is currently pending in federal court, rather than New Jersey state court.[3] The Court does not agree. Numerous courts have held that the *Brillhart* rule applies with equal effect where the parallel action is pending in another federal district, rather than a state court. *See, e.g. Knapp v. Depuy Synthes Sales Inc.*, 983 F. Supp. 2d 1171, 1177 (E.D. Cal. 2013) (collecting cases). Even if the federalism and comity considerations articulated in *Summy* and *Brillhart* do not apply with full force, many of the practical considerations underlying the *Summy* and *Reifer* factors apply regardless of whether the New Jersey Action proceeds in New Jersey state or federal court.[4] In sum, the Court concludes that the existence of the New Jersey Action triggers a presumption against exercise of Declaratory Judgment jurisdiction by this Court.

In addition, the Insurers argue that regardless of any presumption, the Declaratory Judgment case should proceed in this Court pursuant to the "first-filed" doctrine. As summarized in *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971-72 (3d Cir. 1988) *aff'd*, 493 U.S. 182 (1990):

> The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank. It gives a court "the power" to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court. *See Triangle Conduit & Cable Co. v. National Elec. Products Corp.*, 125 F.2d 1008, 1009 (3d Cir.), cert. denied, 316

---

[3] Due to the pending Motion to Remand, it is unresolved, at this juncture, whether the New Jersey forum will ultimately be in state or federal court.

[4] By analogy, if the Policyholders filed a motion pursuant to 28 U.S.C. § 1404(a) to transfer this case to the United States District Court for the District of New Jersey, similar prudential factors would be implicated. *See Jumara v. State Farm Ins.*, 55 F.3d 873, 879-80 (3d Cir. 1995) (listing public and private interests to be considered in resolving a motion to transfer case).

11

> U.S. 676, 62 S.Ct. 1046, 86 L.Ed. 1750 (1942). That authority, however, is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping. District courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule.

The Court is not persuaded by the Insurers' argument regarding the first-filed doctrine. In *Summy*, the Court of Appeals stated: "It is irrelevant that the state declaratory judgment petition was filed after its counterpart in the District Court." 234 F.3d at 136. *Accord Ironshore Specialty Ins. Co. v. Haines & Kibblehouse, Inc.*, 3 F. Supp. 3d 303, 309-10 & n.23 (E.D. Pa. 2014) (citations omitted) (explaining that the sequence of filing of declaratory judgment actions is of no import). In other words, it does not matter that the Insurers won the race to this courthouse. Thus, the Court need not resolve the Policyholders' alternative contention that the first-filed rule does not apply because the Insurers acted in bad faith by filing the Declaratory Judgment Action before informing them of the decision to deny coverage as to the Second Amended Complaint in the Underlying Action.

The Court has contemplated at length whether it would be a practical and wise use of judicial resources to hear the Declaratory Judgment case in this Court under the particular facts and circumstances of this case.[5] The *Summy* factors weigh in favor of declining jurisdiction. Clearly, the Underlying Action arises in New Jersey out of a New Jersey environmental construction project. A parallel lawsuit is pending in New Jersey which addresses the same issues, such that a presumption of restraint should apply. The Court notes the inherent conflict of interest between the Insurers' duty to defend and their right to assert a policy exclusion, and recognizes that the coverage issues on which the Insurers seek declaratory relief are distinct from

---

[5] The Court recognizes the Insurers' right to seek a declaratory judgment in this forum. Indeed, this member of the Court recently exercised Declaratory Judgment jurisdiction in *Nationwide Prop. & Cas. Ins. Co. v. Shearer*, 2015 WL 1186008 (W.D. Pa. March 13, 2015).

12

the project workmanship claims at issue in the Underlying Action. Of considerable weight is the duty to avoid duplicative litigation. As noted, the New Jersey Action will proceed in any event, because it contains additional parties (in particular, Nautilus)[6] and additional causes of action (in particular, claims regarding coverage for consequential damages and insurance bad faith claims).

The *Reifer* factors are mixed, but also weigh in favor of declining Declaratory Judgment jurisdiction. A declaration by this Court would certainly resolve the coverage issues raised by Steadfast and Zurich; however, such declaration would not resolve the coverage issues regarding Nautilus or consequential damages. It is possible that there could be inconsistent results in the cases if this case and the New Jersey Action proceed to final resolution. Western Pennsylvania would be an inconvenient forum for all parties and witnesses except the Policyholders (ironically, the parties that oppose this forum). The public interest in resolution of these matters is most keen in New Jersey.[7] An alternative forum is available, which is relatively more convenient in light of the related litigation that is proceeding in Bergen County, New Jersey. The fifth, sixth and eighth *Reifer* factors are duplicative of the *Summy* factors. The seventh *Reifer* factor is a tie. In the Court's view, both sides have used the declaratory judgment device as a method of procedural fencing.

Ultimately, the Court concludes, after weighing all these factors, that it will decline to exercise jurisdiction. Contrary to the Insurers' contentions, it does not matter whether the parallel action is pending in state or federal court; nor whether it was filed first or second. The

---

[6] The Court agrees with the Insurers that EFG and Kane are not necessary parties and the fact that they were named as parties, as required by New Jersey law, does not influence the Court's analysis.

[7] The Policyholders contend that New Jersey law will apply. The Insurers contend that Pennsylvania law will govern the Zurich policy. However, the Zurich policy attached as Exhibit D to the Complaint appears to contain a New York "choice of law" provision. *See* ECF No. 1-5 at 25.

lack of a strong Pennsylvania interest in the underlying dispute, the existence of a more comprehensive lawsuit in New Jersey, and the need to avoid duplicative litigation make it prudent to decline to exercise Declaratory Judgment jurisdiction over this case.

**IV.     Conclusion**

For the foregoing reasons, the Court will decline to exercise Declaratory Judgment jurisdiction and this case will be **DISMISSED WITH PREJUDICE**. An appropriate order follows.

McVerry, S.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEADFAST INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br>　　　　Plaintiffs,<br><br>　　　　v<br><br>ENVIRONMENTAL BARRIER COMPANY, LLC., GEO-SOLUTIONS, INC. *successor-in-interest to* ENVIRONMENTAL BARRIER COMPANY, LLC **and EBC HOLDCO, LLC**,<br>　　　　Defendants. | 2:15-cv-1442 |

## ORDER OF COURT

**AND NOW**, this 8th day of March, 2016, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, OR ALTERNATIVELY STAY (ECF No. 12) and MOTION FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS (ECF No. 25) are **GRANTED**. The Court will decline to exercise Declaratory Judgment jurisdiction and this case is hereby **DISMISSED WITH PREJUDICE**. The clerk shall docket this case closed.

　　　　　　　　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　s/Terrence F. McVerry
　　　　　　　　　　　　　　　　　　　Senior United States District Judge


cc:　　All counsel of record
　　　　Via CM/ECF